UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK DIBERT, | ) | Case No. 1:07CV2759 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION & ORDER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security ("Commissioner") finding that he was not entitled to Disability Insurance Benefits ("DIB"). ECF Dkt. #1, 18. Plaintiff asserts that the Administrative Law Judge ("ALJ") lacked substantial evidence in which to find that he retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. ECF Dkt. #18 at 9-13. Plaintiff also contends that the ALJ improperly evaluated his treatment compliance. *Id*. at 13-17. For the following reasons, the undersigned reverses the ALJ's decision and remands this case for further factfinding, analysis and articulation of his rejection of Dr. Mooney's October 17, 2005 pulmonary RFC assessment.

**I.   PROCEDURAL HISTORY**

On September 9, 2003, Plaintiff protectively filed for DIB alleging disability beginning

1

September 1, 2002 due to asthma, emphysema and sleep apnea. Tr. at 52, 67, 71. The Social Security Administration (SSA) denied the claim and affirmed the denial upon reconsideration. *Id*. at 39-45. Plaintiff requested a hearing before an ALJ. *Id*. at 46. The SSA granted the request and the ALJ held a hearing and received testimony from Plaintiff and a vocational expert. *Id*. at 32-35, 174-201.

Following the administrative hearing, the ALJ issued a written decision denying Plaintiff DIB. Tr. at 11-23. The ALJ found that while Plaintiff had the severe impairments of obesity, tobacco abuse, chronic obstructive pulmonary disease ("COPD"), asthma, and sleep apnea, none of these impairments, individually or in combination, met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 18. The ALJ found that Plaintiff could perform at least a reduced range of sedentary work, lifting no more than ten pounds, with no exposure to concentrated amounts of smoke, fumes, gases, humidity or temperature extremes. *Id*. In making his decision, the ALJ rejected the October 17, 2005 opinions of Plaintiff's pulmonary and sleep specialist and he discussed Plaintiff's failure to stop smoking and follow other recommended treatments and tests. *Id*. at 20-21.

Plaintiff filed a request for review, which the Appeals Council denied, making the ALJ's decision the final decision of the Commissioner. Tr. at 3-7. Plaintiff now seeks review pursuant to 42 U.S.C. § 1383(c). ECF Dkt. #1.

## II. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience, and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### III. STANDARD OF REVIEW

Under the SSA, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's

findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

The Sixth Circuit has held that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . .This is because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Therefore, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Moreover, this Court can remand a case under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence-four remand provides relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further factfinding is necessary. *Faucher v. Sec'y of Health and Human Servs*., 17 F.3d 171, 174 (6th Cir. 1994), citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs*., 804 F.2d 964, 966 (6th Cir. 1986), citing *Willis v.*

*Sec'y of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). The decision to deny benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *See id.*

## IV. ANALYSIS

### A. TREATING PHYSICIAN OPINION

Plaintiff first contends that the ALJ's RFC determination lacks substantial evidence because it fails to sufficiently articulate the reasons for rejecting the opinions of Dr. Laurie Mooney, Plaintiff's treating pulmonary and sleep specialist. ECF Dkt. #18 at 9-13. For the following reasons, the undersigned agrees with Plaintiff.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician so long as that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. When

an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "'be bewildered when told by an administrative bureaucracy that []he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 *(quoting Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir.1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

In the case at bar, the ALJ rejected Dr. Mooney's October 17, 2005 opinions set forth in the pulmonary RFC questionnaire. Tr. at 20. Dr. Mooney diagnosed Plaintiff with asthma and COPD, identified the clinical results that confirmed those diagnoses, and identified Plaintiff's symptoms as shortness of breath, chest tightness, palpitations, fatigue, episodic acute asthma, wheezing and coughing. *Id*. at 143. She stated that "severe baseline disease makes attacks

dangerous." *Id*. Dr. Mooney further found that Plaintiff was not a malingerer, his symptoms were severe enough to constantly interfere with his attention and concentration, and he was not capable of even low stress jobs because stress could bring on an attack. *Id.* at 144. She cited Plaintiff's prognosis as poor, and opined that his impairments had lasted and/or could be expected to last for more than twelve months. *Id*. at 145. Dr. Mooney further opined that Plaintiff could walk no city blocks without rest, he could sit for only thirty minutes at one time before needing to get up, he could not stand for any amount of time at one time before having to sit down or walk, and he could sit and stand/walk a total of less than two hours per eight-hour workday. *Id*. at 145. She further concluded that Plaintiff would need to take unscheduled breaks on an hourly basis during the workday and would have to rest for thirty minutes at a time before having to return to work. *Id*.

Dr. Mooney also opined that Plaintiff could never lift and carry even less than ten pounds, he could never twist, stoop, bend, crouch, climb ladders or stairs, and he should avoid all exposure to extreme cold and heat, high humidity, fumes, odors, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, chemicals, and other irritants. Tr. at 146-147. She further concluded that Plaintiff's impairments would produce "good" days and "bad" days which would likely result in his absence from work more than four days per month. *Id*. at 147.

The ALJ rejected this assessment and opinion, finding that it was

> clearly inconsistent even with the claimant's own testimony. For example, the claimant said that he could walk several blocks, but Dr. Mooney states that he cannot walk even one block and that he will need to rest for 30 minutes every hour (Exhibit 7-F, page 3). This is inconsistent with the claimant's own testimony as well as with the objective medical evidence. It is also inconsistent with Dr. Mooney own prior evaluation, found in Exhibits 2-F and 3-F, where she states that the claimant can sit/stand and that he can lift five pounds, even though he is not compliant with medical treatment.

Tr. at 20-21.

The Court first notes that neither the ALJ nor Defendant challenge whether Dr. Mooney is a treating physician and both of them based their discussions and analyses on the assumption that she was. Dr. Mooney treated Plaintiff during 2002 and 2003, but when she completed the 2005 RFC questionnaire, her accompanying records indicated that she had not examined Plaintiff in two years. Tr. at 104, 148. Without a challenge, Dr. Mooney is a "treating source" and her opinions are entitled to controlling weight if she employed medically-acceptable clinical and laboratory diagnostic techniques and her opinion is not inconsistent with other evidence. *See id.*; 20 C.F.R. §404.1527(d)(2); *McKenzie*, 2000 WL 687680 at *3.

In his brief, Defendant identifies the objective medical evidence that the ALJ must have used in rejecting Dr. Mooney's recent RFC as inconsistent with the evidence. However, the ALJ did not identify this evidence in the part of his decision in which he rejected Dr. Mooney's assessment. The ALJ also failed to address the findings and conclusions within the objective medical evidence cited by Defendant that would negate his finding of inconsistency. Defendant cites normal chest x-rays and a finding of only moderate obstruction on pulmonary function tests as the evidence upon which the ALJ must have relied in finding that Dr. Mooney's 2005 assessment was inconsistent with the medical evidence. ECF Dkt. #20 at 7. Defendant also cites to an April 2006 report which indicated that Plaintiff's "condition improved from moderate to only mild obstruction after he took bronchodilator medication." ECF Dkt. #20 at 7, citing Tr. at 173.

Reviewing this evidence, Plaintiff's chest x-rays did show normal results. Tr. at 129, 172. And the December 22, 2003 pulmonary function test did indicate "good improvement" after

-8-

Plaintiff used bronchodilators. *Id*. at 114. Plaintiff's other pulmonary test conducted in April 2006 also showed that he had moderate obstruction before the bronchodilators and "only" mild obstruction after taking the bronchodilators. *Id*. at 173. However, the April 2006 test also indicated that Plaintiff's lung age was 101 years, he still had low vital capacity, and he "had no significant improvement with the bronchodilators." Tr. at 173.

Without identification of the objective medical evidence that showed inconsistency with Dr. Mooney's 2005 RFC assessment, or a discussion of parts of this same evidence which suggested no inconsistency in Dr. Mooney's latest assessment, the ALJ has failed to demonstrate that Dr. Mooney's opinion is inconsistent with other evidence.

Moreover, the Court finds that substantial evidence is also lacking for the more specific reasons offered by the ALJ to support his rejection of Dr. Mooney's 2005 assessment. In addition to the inconsistency with the unidentified objective medical evidence, the ALJ also found that Dr. Mooney's 2005 assessment was inconsistent with Plaintiff's own testimony.

In her 2005 assessment, Dr. Mooney stated that in a competitive work situation on an ongoing basis, Plaintiff could not walk even one city block without having to rest. Tr. at 145. The "testimony" that the ALJ offers to find inconsistency with this assessment was a medical note written by Dr. Kodz, Plaintiff's primary care physician, which was issued ten months after Dr. Mooney's assessment. Dr. Kodz indicated that Plaintiff was "limited to two to three blocks or less with his SOB[shortness of breath]." *Id.* at 170.

The ALJ provides no discussion about the alleged inconsistency of the two statements, especially in light of the context in which Dr. Mooney's November 17, 2005 assessment was placed. The RFC questionnaire that Dr. Mooney completed on November 17, 2005 asked her to

-9-

estimate Plaintiff's functional limitations for walking city blocks without rest if he were placed in a "competitive work situation on an ongoing basis." Tr. at 145. Dr. Kodz's note indicating that Plaintiff was limited to walking two or three blocks or less contains no "competitive work situation" or "without rest" restrictions. It is merely a note indicating Plaintiff's range of symptoms. In determining a claimant's RFC to perform a certain type of work, "the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989), citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc). The daily activities that a claimant may or can perform do not result in a finding that he is able to work in competitive employment. *See Clester v. Apfel*, 70 F.Supp.2d 985, 991 (S.D. Iowa 1999). A competitive work situation would naturally involve time limitations, and may also involve other additional limiting factors, such as having to carry equipment, a tool belt or other work-related items while standing or walking. In Dr. Kodz's notation, no time factors were indicated and a competitive work environment was not mentioned while Dr. Mooney's 2005 assessment strictly limited her to determining whether and to what extent, if any, Plaintiff could walk a city block without rest if he were placed in a competitive work situation on an ongoing basis. Tr. at 145.

Without recognition or explanation of such a distinction by the ALJ, and a failure to discuss the alleged inconsistency beyond a conclusory statement, the Court finds that substantial evidence does not support the ALJ's finding on this issue.

Moreover, the ALJ failed to discuss the testimony given by Plaintiff at the ALJ hearing regarding his abilities to stand and/or walk which contradicts his findings. Plaintiff indicated in an

April 2006 report that he could not remain on his feet, either walking or standing, for more than a half-hour, and he could not walk more than five feet without losing his breath. Tr. at 13. Plaintiff also testified that he had difficulty ascending the twelve stairs to his apartment twice a day because he became winded, could not breathe and sometimes suffered coughing attacks. *Id*. at 184. Thus, substantial evidence is lacking for this reason given by the ALJ for finding Dr. Mooney's 2005 assessment as inconsistent with Plaintiff's "testimony."

The ALJ also relied upon Exhibits 2-F and 3-F in support of his finding of inconsistencies in Dr. Mooney's November 24, 2003 evaluation and her 2005 assessment. A review of these Exhibits indicates that Exhibit 3-F is not an assessment by Dr. Mooney but rather is a pulmonary function study requested by the Bureau of Disability Determination of the Ohio Rehabilitation Services Commission and conducted by a Dr. Sushil Sethi. *Id*. at 106-114. Exhibit 2-F is a November 24, 2003 evaluation by Dr. Mooney in which she states that Plaintiff cannot walk for even one city block. *Id*. at 104. She also finds that his abilities to sit and stand are not limited and his abilities to lift, carry and handle objects weighing over five pounds for any length of time over fifteen minutes are also limited. *Id.*

Although Dr. Mooney's October 24, 2005 assessment is more restrictive, the Court finds that it is not necessarily inconsistent with her 2003 assessment because a two-year time period elapsed between these two evaluations. Further, Dr. Mooney's RFC from October 24, 2005 is entirely consistent with her November 24, 2003 prognosis of Plaintiff's condition as poor. Tr. at 104. Restricting Plaintiff's abilities even more in 2005 could very well indicate a worsening of Plaintiff's condition over the two years since Dr. Mooney examined him. In fact, in the notes accompanying her October 24, 2005 RFC questionnaire, Dr. Mooney indicated that Plaintiff had

cut down on his use of cigarettes from two packs a day to one pack a day, yet still experienced chronic flare-ups of his symptoms on a daily basis which required use of his rescue inhaler and the use of his albuterol inhaler five to six times per day. *Id*. at 148. She further noted that Plaintiff had not been on prednisone or antibiotics lately, he had audible wheezing upon examination, as well as a crowded pharynx, and diminished breath sounds. *Id*. Dr. Mooney diagnosed Plaintiff with moderate to severe persistent asthma, suboptimally treated, with exacerbation, emphysema, tobacco dependence, and probable sleep apnea. *Id*. For these reasons, substantial evidence does not support the ALJ's reliance upon Exhibits 2-F and 3-F as inconsistent with Dr. Mooney's 2005 assessment.

While substantial evidence does not support the ALJ's reasons for rejecting Dr. Mooney's 2005 RFC assessment, the Court cannot find that the record adequately establishes Plaintiff's entitlement to benefits. *Newkirk,* 25 F.3d at 317. The Court cannot find that the ALJ's decision is clearly erroneous, or that proof of disability is overwhelming, or strong with evidence to the contrary is lacking. *Faucher*, 17 F.3d at 176. Rather, the Court finds that further factual findings remain and additional evaluation, analysis and articulation are necessary by the ALJ if he chooses to reject Dr. Mooney's 2005 assessment a second time.

### B. SMOKING/TREATMENT NONCOMPLIANCE

Plaintiff also argues that the ALJ erred in substantially relying upon his lack of treatment compliance in denying him DIB. ECF Dkt. #18 at 13-17. Plaintiff asserts that his inability to stop smoking was central to the ALJ's determination and he could not afford to comply with other treatments and testing suggested by doctors because he had no health insurance and no money. *Id*. Plaintiff discusses caselaw from the Sixth Circuit and other circuits concerning 20 C.F.R.

§ 404.1530 and asserts that the ALJ improperly applied this regulation and should not have relied upon his failure to quit smoking in order to deny him DIB. *Id*.

20 C.F.R. § 404.1530 provides in relevant part:

> § 404.1530 Need to follow prescribed treatment.
>
> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 404.1530. The regulation further describes the reasons that are considered acceptable for failing to follow prescribed treatment. 20 C.F.R. § 404.1530(c).

Upon review of the ALJ's decision, the Court finds that he did not use 20 C.F.R. § 404.1530 as a basis in which to deny Plaintiff DIB. The ALJ makes no mention of 20 C.F.R. § 404.1530 in his decision. Rather, he cites and paraphrases the credibility ruling, Social Security Ruling 96-7p ("SSR 96-7p"), and sets forth the law on pain analysis and credibility determinations. Tr. at 19. One of the factors to consider in a credibility/pain analysis is the course of treatment followed and measures used to reduce symptoms. Much like 20 C.F.R. § 404.1530, SSR 96-7p contains language relating to the failure to follow treatment:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner

-13-

The Ruling goes on to list examples of reasons that may give insight for not seeking medical treatment or not pursuing treatment in a consistent manner.  SSR 96-7p.

The ALJ in this case repeatedly discussed Plaintiff's failure to quit smoking and his failure to comply with recommended treatments.  However, he did so in the context of evaluating Plaintiff's testimony regarding his severe pain and functional limitations.  Tr. at 20.  For instance, the ALJ indicated that "[i]n evaluating his complaints, full consideration has been given to all medical and other evidence that reflects on his impairments and any attendant limitations of function."  *Id.*  The ALJ thereafter discusses Plaintiff continuing to smoke and not complying with recommendations relating to medical testing and treatments.  *Id.*  The ALJ thereafter states that:

> [h]aving carefully considered the evidence of record and the claimant's testimony, the residual functional capacity as described is well within his capability.  The claimant well experience some symptomatology as the result of his impairments, but his discomfort is controllable, and his allegations of debilitating limitations and discomfort are not persuasive.  In short, a careful examination of the longitudinal medical record indicates that the claimant has no "disabling" physical or mental impairments or limitations whatsoever.

*Id*.  The Sixth Circuit Court of Appeals has held that it is proper for an ALJ to consider a smoking habit in the context of credibility and in the determination of whether such a lifestyle habit is consistent with the allegations of a disabling condition.  In *Sias v. Secretary of Health and Human Services,* the Sixth Circuit held:

> [t]he claimant's style of life is not consistent with that of a person who suffers from intractable pain or who believes his condition could develop into "a very quick life-threatening situation."  The claimant admitted to the ALJ that he was at least 40 pounds overweight; ignoring the instructions of his physician, he has not lost weight.  He claims he has not worn support hose his physician prescribed to alleviate swelling because support hose would cost too much-yet the claimant admits that against the advice of his doctor he smokes two packs of cigarettes a day.  Taking judicial notice of the monetary cost of this dangerous habit, we calculate that the cost of the hose could have been covered by the savings the claimant would realize if he gave up cigarettes.

861 F.2d 475, 480 (6th Cir. 1988).  That Court went on to find that "[i]f the claimant in this case

-14-

chooses to drive himself to an early grave, that is his privilege-but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride." *Id.* While the Court recognizes that scientific research has determined the highly addictive nature of nicotine since *Sias*, the *Sias* case still stands as good law in this Circuit. *See* Statement on Nicotine before the Committee on Labor and Human Resources, U.S. Senate, National Institute on Drug Abuse, Feb. 10, 1998, www.nida.nih.gov/testimony/2-11-98Testimony.html; s*ee also Anderson v. Astrue*, No. 2:07-CV-140, 2009 WL 32935, at *9 (E.D. Tenn. 2009); *Van Heck v. Comm'r of Soc. Sec.*, No. 06-15233, 2008 WL 1808320, at *13 (E.D. Mich. Apr. 21, 2008), unpublished.

Accordingly, the Court finds that the ALJ in this case properly considered Plaintiff's inability to stop smoking in the context of his credibility. Even Dr. Mooney noted that Plaintiff's response to treatment for emphysema, asthma, and sleep apnea were poor due not only to his inability to afford tests and medications, but also because he failed to follow instructions, which included to stop smoking and lose weight. Tr. at 104. Plaintiff provides insufficient evidence that the ALJ denied his DIB based upon his inability to stop smoking or follow recommended treatments and testing and the decision indicates a proper application of the law in this Circuit.

Accordingly, the Court finds no merit to Plaintiff's assertion of error on this issue.

### V.     **CONCLUSION**

Based upon a review of the record and the law, the Court reverses and remands the ALJ's decision on the issue of the ALJ's rejection of Dr. Mooney's October 17, 2005 pulmonary RFC assessment. The Court finds that substantial evidence does not support this part of the ALJ's decision and hereby remands the instant case for further factfinding and articulation by the ALJ with regard to the reasons for rejecting this assessment, should he choose to do so a second time. The Court finds no merit to Plaintiff's assertion that the ALJ committed legal error in considering

his failure to stop smoking or to follow recommended treatments and studies as a basis for discounting his credibility.

Date: January 30, 2009                          /s/ *George J. Limbert*
                                                GEORGE J. LIMBERT
                                                U.S. MAGISTRATE JUDGE